In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 01-2508 & 01-3059

PEABODY COAL COMPANY and
OLD REPUBLIC INSURANCE COMPANY,

*Petitioners*,

*v.*

ESTATE OF J.T. GOODLOE, Larry
Goodloe, Personal Representative, and
SHELBY HALLMARK, Acting Director,
Office of Workers' Compensation Programs,

*Respondents*.

Petitions to Review Orders of the
Benefits Review Board, United States Department of Labor
No. 00 BLA 0676

ARGUED APRIL 5, 2002—DECIDED AUGUST 12, 2002

Before FLAUM, *Chief Judge*, POSNER and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Peabody Coal Company and Old Republic Insurance Company (collectively "Peabody") appeal from orders entered by the Benefits Review Board ("BRB") in favor of the Estate of J.T. Goodloe. The BRB affirmed an award to Goodloe of black lung benefits and an award of fees to his attorney, who has pursued this

claim for Goodloe and now for his estate for approximately twenty-four years. We previously remanded because the Administrative Law Judge applied an incorrect legal standard in determining whether to invoke an interim presumption that Goodloe suffered from a coal-related impairment. *See Peabody Coal Co. v. Goodloe*, 116 F.3d 207 (7th Cir. 1997). On remand, the ALJ applied the standard we set out and again concluded that Goodloe was entitled to benefits. We now affirm.

## I.

We will assume familiarity with our earlier opinion and will repeat only those facts necessary to the disposition of this successive appeal. Goodloe worked in the coal mines for more than thirty years. In 1978, he filed a claim for black lung benefits. Because of the length of time that he worked in the mines, Goodloe was entitled to an interim presumption of total disability due to pneumoconiosis (commonly known as black lung disease) if he could meet any of the criteria set forth in 20 C.F.R. § 727.203(a). The only criterion at issue at this point in the proceedings is subsection (a)(3), which provides, in relevant part, that a miner will be presumed to be totally disabled due to pneumoconiosis if he can demonstrate the following medical condition by a preponderance of the evidence:

> Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified [in an attached table].

20 C.F.R. § 727.203(a)(3). Goodloe's physicians conducted two studies of his blood gas levels, one in 1979 and one in 1984. The 1979 study produced non-qualifying results but the 1984 study was well within the qualifying range. In-

deed, the 1984 study indicated theat Goodloe was suffering severe oxygen deprivation. Goodloe's blood oxygen levels were so low that every physician reviewing the results initially questioned the validity of the study.

In our prior opinion, we remanded the case because the ALJ placed an impermissible burden on the employer in determining whether to invoke the interim presumption. Rather than placing the burden of proof for the validity of the blood gas study on Goodloe, the ALJ invoked the presumption because Peabody failed to produce evidence that would invalidate the study. *Goodloe*, 116 F.3d at 212. On remand, we held that Goodloe was entitled to the interim presumption only if he could show by a preponderance of the evidence that the 1984 blood gas study was valid. *Id*. If Goodloe was able to show he was entitled to the presumption, Peabody would then have an opportunity to rebut the presumption using the methods set forth in section 727.203(b).

On remand, the ALJ considered the 1984 blood gas study ordered and reviewed by Dr. Henry Peters. Dr. Peters conducted a thorough physical examination of Goodloe at that same time and also ordered other diagnostic tests. When he received the results of the blood gas study, Dr. Peters asked the lab to double-check the test and verify it for accuracy, which the lab did to the doctor's satisfaction. The ALJ noted that Dr. Peters' physical examination of Goodloe and another diagnostic test corroborated the results of the blood gas study. At the examination, Goodloe appeared short of breath without exertion. He also exhibited increased chest diameter and clubbing of the digits.[1] Another blood test conducted at that time indicated that

---

[1] Clubbing of the digits refers to a broadening and thickening of the fingers or toes with increased lengthwise curvature and curvature of the tip of the nail, with flattening of the angle between the cuticle and nail. *See* www.nlm.gov/medlineplus/ency/article/003282.htm.

Goodloe had a condition known as polycythemia, or excessive red blood cells. This condition develops as a reaction to severe oxygen deficiency. All of these physical findings are consistent with black lung disease. Although two other physicians (Drs. Frank Stewart and David Howard) who subsequently reviewed the results doubted the validity of the qualifying blood gas study, the ALJ noted that neither had examined the miner, and the employer had produced no evidence suggesting the test results were invalid. Because Goodloe produced evidence that corroborated the validity of the study, the ALJ invoked the presumption under section 727.203(a)(3).

The ALJ proceeded to analyze whether Peabody could rebut the presumption under section 727.203(b). Under that section, the employer could rebut the presumption by demonstrating that (1) the miner was in fact performing his usual coal mine work or comparable, gainful work; (2) the miner was able to perform his usual coal mine work or comparable, gainful work; (3) the miner's total disability or death did not arise in whole or in part out of coal mine employment; or (4) the miner does not or did not have pneumoconiosis. The ALJ found no rebuttal evidence under the first prong of the test; Goodloe had stopped working in the mines and subsequently died.

Under the second prong, the ALJ found the medical evidence submitted by Peabody insufficient to establish by a preponderance of the evidence that Goodloe was capable of performing his usual coal mine or other comparable and gainful work. The ALJ rejected the medical opinions of Drs. Vest, Renn and Tuteur because they related exclusively to a 1979 pulmonary function study that did not produce qualifying results. In reviewing the opinions of Drs. Howard and Stewart, the ALJ considered whether Peabody could show that Goodloe was not disabled from performing his usual coal mine work despite the valid 1984 blood gas test. On that rebuttal point, the ALJ

noted, the employer could not rely on evidence already considered and rejected in the invocation of the presumption. The ALJ thus refused to reconsider the opinions of Drs. Howard and Stewart questioning the validity of the 1984 blood gas study. That left the employer with Dr. Howard's opinion that coronary artery disease could have produced the shortness of breath that Goodloe experienced, and Dr. Stewart's opinion that Goodloe's continued cigarette smoking would have contributed to his failing health between the 1979 test and the 1984 test. Neither Dr. Stewart nor Dr. Howard testified as to the degree of impairment that would be expected if they presumed the 1984 blood gas study was valid. The ALJ thus found that Peabody failed to produce sufficient evidence on the second rebuttal prong.

On the third prong, the ALJ considered whether Peabody had shown by a preponderance of the evidence that black lung disease was not a contributing cause to Goodloe's disability. Goodloe had smoked cigarettes all of his adult life, and Peabody maintained that tobacco and not coal was the source of his lung problems. The ALJ found inadequate support for this argument in the record, ruling that none of the physicians testifying convincingly ruled out coal dust exposure as a contributing cause for Goodloe's disability. Finally, the ALJ contemplated Peabody's evidence on the fourth prong, whether Goodloe suffered from pneumoconiosis. The employer submitted x-rays and the opinions of Drs. Howard and Stewart. Although the ALJ agreed that the x-rays did not support a finding of pneumoconiosis, he also found that negative x-rays alone cannot establish the absence of the disease. The ALJ found that the opinions of Drs. Howard and Stewart did not adequately explain why thirty-three years of coal dust exposure was not a factor in Goodloe's lung disease. Accordingly, the ALJ found that Peabody had failed to adequately rebut the presumption of total disability due to coal

dust exposure and granted Goodloe's claim for benefits. Subsequently, the Benefits Review Board affirmed the ALJ's award of benefits and found that Goodloe's counsel was entitled to fees totaling $2300, representing 11.5 hours of work at a rate of $200 per hour. Peabody appeals.

## II.

Although Peabody appeals the decision of the BRB, this court reviews the decision of the ALJ, not the BRB. *Goodloe*, 116 F.3d at 211; *Consolidation Coal Co. v. Office of Workers' Compensation Programs*, 54 F.3d 434, 436 (7th Cir. 1995). We will not overturn an ALJ's decision if it is rational, supported by substantial evidence and consistent with the governing law. *Goodloe*, 116 F.3d at 211. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* Moreover, in reviewing the decision of the ALJ, we will not reweigh the evidence or substitute our judgment for that of the ALJ. *Id.* Peabody challenges both the ALJ's invocation of the presumption under section 727.203(a)(3) and the ALJ's holding that Peabody failed to meet the standard for rebuttal under section 727.203(b)(3). Peabody also contests the attorney's fee awarded to Goodloe's counsel, objecting that there was an inadequate basis for the hourly rate requested.

Peabody challenges the ALJ's invocation of the interim presumption with the testimony of Drs. Howard and Stewart. Both physicians testified that they would view Goodloe's blood gas results with suspicion and would probably have the test repeated rather than accept the results at face value. Dr. Peters himself initially doubted the validity of the test and called the laboratory conducting the test to verify the result. The laboratory validated the test to Dr. Peters' satisfaction. Moreover, Goodloe exhibited shortness of breath without exertion, an expanded

chest diameter, clubbing of the digits, and polycythemia, or excessive red blood cells. Polycythemia develops as a reaction to severe oxygen deficiency. All of these conditions corroborated the results of the blood gas test. The ALJ thus concluded that Goodloe had proved by a preponderance of the evidence that a valid blood gas study met the qualifying levels set by section 727.203(a)(3), and Goodloe was thus entitled to the interim presumption of total disability due to pneumoconiosis. *Mullins Coal Co., Inc. of Virginia v. Director, O.W.C.P., U.S. Dept. of Labor*, 484 U.S. 135, 159 (1987). In short, the ALJ's decision to invoke the interim presumption based on the 1984 blood gas study was rational, supported by substantial evidence and consistent with the governing law. Peabody's argument amounts to a request that we reweigh the evidence, which we may not do. *Consolidation Coal*, 54 F.3d at 436.

Peabody argues in the alternative that, even if Goodloe was entitled to the interim presumption, the ALJ erred in ruling that Peabody failed to rebut the presumption under section 727.203(b)(3). That section provides that the employer may rebut the interim presumption by demonstrating that the total disability or death of the miner did not arise in whole or in part out of coal mine employment. 20 C.F.R. § 727.203(b)(3); *Old Ben Coal Co. v. Director, O.W.C.P., U.S. Dept. of Labor*, 62 F.3d 1003, 1008 (7th Cir. 1995). The employer may meet its burden under this section by showing that the miner's pneumoconiosis was not a contributing cause of his total disability. *Old Ben Coal Co.*, 62 F.3d at 1008. A "contributing cause" means coal dust exposure was a necessary, though not necessarily sufficient, cause of a miner's disability. *Id*. To meet this standard, the employer must demonstrate by a preponderance of the evidence that pneumoconiosis was in no way related to the claimant's disability. *Id*.

Peabody attempts to meet this standard by arguing that Goodloe's disability was due solely to his history of ciga-

rette smoking. Peabody cites the opinion of Dr. Howard that Goodloe suffered from an obstructive rather than restrictive impairment of lung function. Dr. Howard opined that smoking-related emphysema was thus the more likely cause of Goodloe's impairment. The ALJ rejected this evidence because Dr. Howard failed to explain how thirty-three years of coal dust exposure did not contribute to Goodloe's lung impairment, especially because emphysema comes within the legal definition of pneumoconiosis. Peabody also relies on Dr. Stewart's opinion that, in 1979, Goodloe suffered only mild coronary artery disease brought on by cigarette smoking. The ALJ noted, however, that Dr. Stewart offered no opinion as to the etiology of Goodloe's lung impairment, either on direct or cross-examination. The ALJ reasoned that Dr. Stewart's diagnosis of mild coronary artery disease did not rebut the presumption because Dr. Stewart never addressed whether coal dust was a contributing cause of Goodloe's impairment. The ALJ correctly noted that the employer could not rely on evidence introduced and rejected during the invocation analysis. *Mullins Coal*, 484 U.S. at 150 n.26. The ALJ concluded that Peabody failed to prove its case for rebuttal with a preponderance of the evidence. Peabody again suggests that we reweigh the evidence and conclude that Goodloe's impairment was due to cigarette smoking rather than coal dust exposure. Peabody's evidence is rather thin, though, and it is not our function to substitute our own judgment for that of the ALJ. *Consolidation Coal*, 54 F.3d at 436. The ALJ's conclusion was rational, supported by substantial evidence and not contrary to the law of this circuit. We therefore affirm the judgment.

The only issue that remains is Peabody's objection to the amount of fees awarded to Goodloe's attorney, Jack VanStone. Peabody maintains that VanStone's request for $200 per hour for his work on this case is not based on his customary rate and is not based on a reasonable

rate. Under 30 U.S.C. § 932(a), an attorney for a successful claimant for black lung benefits is entitled to a reasonable attorney's fee. *See United States Dept. of Labor v. Triplett*, 494 U.S. 715, 717-18 (1990). The fee requested must be approved by the appropriate agency or court. *Id*. The fee awarded is to be "reasonably commensurate with the necessary work done," taking into account the quality of the representation, the qualifications of the attorney, the complexity of legal issues involved, the level of proceedings to which the claim was raised, the level at which the attorney entered the proceedings, and any other information which may be relevant to the amount of the fee requested. *Triplett*, 494 U.S. at 718; 20 C.F.R. § 725.366. Moreover, the rate at which the attorney is compensated must be market-based. *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 470 (7th Cir. 2001).

VanStone submitted his request for fees to the BRB, asking for $200 per hour for 11.5 hours of work. In his petition, VanStone represented that $200 was his "usual billing rate per hour." In another case in which VanStone sought fees in the same time frame, he noted nineteen other occasions when this rate had been approved for his work in black lung cases by various administrative law judges, the BRB, and by this Court. The BRB reviewed VanStone's itemized statement of fees, found the amount requested reasonable in light of the services performed, and corrected a small mathematical error in VanStone's fee petition. The BRB awarded a total of $2300. Peabody concedes that VanStone is well-versed in federal black lung law and quite experienced in representing black lung claimants. In response to VanStone's representation that $200 per hour is his usual billing rate, Peabody states that it "reasonably believes that Mr. VanStone's 'customary billing rate' is substantially less than $200 per hour even at this time." Opening Brief at 37 n.24. This statement is pure speculation, however,

and speculation is insufficient to challenge the BRB's finding that VanStone's usual billing rate was reasonable given the work he performed below. Given VanStone's fee recoveries in a number of similar cases, his representation that this is his usual fee, and the absence of any contrary information regarding the market rate from Peabody, we affirm the BRB's award of fees.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*