**PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Iva Hubbell, Respondents.**

No. 02–2705.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 2003.

Decided April 28, 2003.

Before COFFEY, RIPPLE, and EVANS, Circuit Judges.

**ORDER**

Iva Hubbell, widow of deceased coal miner Ray Hubbell, filed a petition seeking federal black lung survivor's benefits pursuant to the Black Lung Benefits Act,

70% of her client base, the equities weighed   against a contractual award attorneys' fees.

30U.S.C. § 901 et seq. An administrative law judge granted Ms. Hubbell's claim and awarded her benefits, concluding that Mr. Hubbell's death was caused, at least in part, by pneumoconiosis, also known as black lung disease. Mr. Hubbell's former employer, Peabody Coal Company, and its insurer, Old Republic Insurance Company (collectively "Peabody"), appealed to the Benefits Review Board of the Department of Labor ("Board"), which affirmed the ALJ's decision on initial review and again on reconsideration. Peabody now appeals, arguing that the ALJ wrongly credited the unsupported diagnosis of a treating physician in concluding that pneumoconiosis hastened Mr. Hubbell's death. We affirm.

## BACKGROUND

Mr. Hubbell was born in 1918 and worked 43 years as a Peabody coal miner in Jasonville, Indiana. He married Ms. Hubbell in July 1940, and retired from mining in June 1981. Mr. Hubbell also smoked cigarettes for a long period of time.

Mr. Hubbell filed unsuccessful claims for disability benefits in September 1981 and December 1984. He filed another petition in November 1992, claiming that he was totally disabled due to pneumoconiosis, a chronic dust disease of the lungs arising from coal mine employment, see 20 C.F.R. § 718.201(a). In October 1996, Mr. Hubbell was diagnosed with lung cancer. Dr. B. Jailwala provided him with radiation therapy, ruling out surgery due to the location of the tumor and his overall weak medical condition. Mr. Hubbell died in December 1996 while his petition was pending. His death certificate listed pneumoconiosis and lung cancer as the causes of death. The ALJ ultimately denied Mr. Hubbell's final disability petition, concluding that, even though Mr. Hubbell had pneumoconiosis and was totally disabled,

he nevertheless failed to establish that the disease had *caused* his total disability. The denial of Mr. Hubbell's disability benefits petition has not been challenged on appeal.

In March 1997 Ms. Hubbell filed a claim for survivor's benefits, the subject of this appeal. In November 2000, the ALJ granted Ms. Hubbell's petition and awarded her survivor's benefits, concluding that pneumoconiosis hastened her husband's death. *See* 20 C.F.R. § 718.205(c)(2). In reaching this determination, the ALJ reviewed medical evidence from Mr. Hubbell's previous applications, as well as additional x-ray evidence and medical opinions from several physicians.

The ALJ first concluded that Mr. Hubbell had pneumoconiosis under the criteria set forth in 20 C.F.R. § 718.202(a)(1) and (a)(4). *See Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs,* 972 F.2d 178, 181 (7th Cir.1992). Under § 718.202(a)(1), pneumoconiosis may be established by positive chest x-ray evidence. *See Freeman United Coal Mining Co. v. Cooper,* 965 F.2d 443, 447 (7th Cir.1992). The ALJ considered Mr. Hubbell's extensive x-ray history, consisting of 36 conflicting readings taken from 1981 through 1996. None of the readings taken from 1981 through late 1992 were positive for the disease. But subsequent readings taken in December 1992, June 1993 and May 1994 were positive. More recent readings from May 7, 1994 through November 1996, however, disclosed no evidence of the disease.

Still, the ALJ concluded that pneumoconiosis had been established by a preponderance of the x-ray evidence under § 718.202(a)(1). The ALJ cited the positive readings taken from 1992 through 1994, and noted that the x-rays taken since January 1994 were inconclusive because they had been taken during Mr. Hubbell's

hospital stays and were not necessarily read to detect pneumoconiosis. He also concluded that a finding of pneumoconiosis was bolstered by the fact that several x-rays revealed the presence of chronic obstructive pulmonary disease ("COPD"), which qualifies as "legal pneumoconiosis" if it is related to coal mine employment. *See* 20 C.F.R. § 718.201(a)(2); *Livermore v. Amax Coal Co.*, 297 F.3d 668, 670–71 (7th Cir.2002).

The ALJ also found that pneumoconiosis had been established by well-reasoned medical opinion notwithstanding the presence of negative x-ray evidence under § 718.202(a)(4). *See Newell v. Dir., Office of Workers' Comp. Programs*, 933 F.2d 510, 511 n. 2 (7th Cir.1991). Specifically, he cited the opinions of Dr. Robert Avena, Mr. Hubbell's treating physician for his final three years who diagnosed pneumoconiosis; Dr. Frederick Ridge, who listed the disease as one of the causes of death; and Dr. Anand Bhuptani, who suspected that Mr. Hubbell had COPD, and hinted that it was related to his exposure to coal dust.

Peabody does not contest that Mr. Hubbell had pneumoconiosis; instead, it takes issue with the ALJ's conclusion that Mr. Hubbell's pneumoconiosis hastened his death under 20 C.F.R. § 718.205(c)(2). *See Peabody Coal Co.*, 972 F.2d at 183–84 (recognizing that any condition that hastens death qualifies as a "substantially contributing cause or factor leading to death" under § 718.205(c)(2)); *see also Livermore*, 297 F.3d at 671. In doing so, the ALJ considered the death certificate, as well as the medical opinions of five physicians—Drs. Avena, Long, Bhuptani, Koenig and Tuteur.

The ALJ placed "no particular weight" on the death certificate, (Ms. Hubbell Ex.3–A), because there was no evidence that the physician who signed it, Dr. Ridge, had treated Mr. Hubbell or that he was familiar with his condition, smoking history, employment history or medical data. Moreover, Dr. Ridge's credentials were not in the record.

The ALJ gave considerable weight to the opinion of Dr. Avena, Mr. Hubbell's last treating physician. Dr. Avena had first examined Mr. Hubbell in January 1994, after he was admitted to Terre Haute Regional Hospital. Dr. Avena examined him nine times over the next three years and noted the presence of pneumoconiosis among a variety of other ailments. His final diagnosis, made two weeks before Mr. Hubbell's death, listed the presence of lung cancer, black lung and COPD. He then listed the causes of death as respiratory arrest secondary to lung cancer, black lung and COPD.

Dr. Avena's pneumoconiosis diagnosis was seconded by Dr. Sarah B. Long, who provided a short medical opinion in August 1997 at the request of the Department of Labor. Dr. Long concluded that Mr. Hubbell had died of lung cancer, but added that pneumoconiosis was a contributing factor. The ALJ, however, placed little weight on her opinion because the medical evidence on which she relied was not in the record, though he did make a finding that her opinion supported Dr. Avena's conclusion.

Dr. Bhuptani, board-certified in internal medicine and pulmonary disease, examined Mr. Hubbell in August 1994 at Dr. Avena's request. Dr. Bhuptani diagnosed Mr. Hubbell with chronic bronchitis, and also suspected the presence of COPD. He also noted a history of coal-dust exposure. But because Dr. Bhuptani did not provide an etiology for the diagnosed conditions, the ALJ found that his report neither supported nor refuted a finding of pneumoconiosis.

Dr. Steven Koenig, who is board-certified in internal medicine, critical care medicine, and pulmonary disease, reviewed Mr. Hubbell's medical data in March 2000. Dr. Koenig did not diagnose pneumoconiosis. He opined that Mr. Hubbell had a totally disabling pulmonary impairment due to obstructive lung disease, including chronic bronchitis and emphysema. He stated that it was impossible to determine whether the emphysema was caused exclusively by coal dust or by cigarette smoking. Consequently, Dr. Koenig diagnosed both as causing his impairment. Dr. Koenig concluded that coal dust exposure could have significantly contributed to and hastened Mr. Hubbell's death, which in his view was caused by respiratory arrest brought on by COPD and lung cancer. The ALJ believed that Dr. Koenig's opinion was "too equivocal to merit much weight" because he did not explicitly link the COPD to coal-dust exposure; instead, he stated merely that exposure *could have* caused it.

Dr. Peter Tuteur, who is board-certified in internal medicine and pulmonary disease, reviewed medical evidence in 1998. Unlike the other physicians, Dr. Tuteur opined that Mr. Hubbell died only from lung cancer caused by his cigarette smoking, and that he did not have pneumoconiosis. In Dr. Tuteur's view, Mr. Hubbell's symptoms were not consistent with any coal-dust related disease or impairment. Dr. Tuteur also did not believe that pneumoconiosis hastened Mr. Hubbell's death. Though the ALJ "placed great weight" on Dr. Tuteur's opinion that lung cancer was a cause of death, he concluded that the physician's failure to address the possible consequences of other respiratory ailments undermined the value of the rest of the opinion.

In light of all of this evidence, the ALJ decided that Ms. Hubbell should be awarded survivor's benefits:

Consequently, I am persuaded by the opinion of Dr. Avena, as bolstered by the findings of Drs. Long and Ridge, that pneumoconiosis at least hastened Mr. Hubbell's death. This opinion is further supported by the miner's 43 years of coal mine employment which exposed him to significant coal dust, and his documented respiratory disability. Therefore, I find Mrs. Hubbell is entitled to survivor's benefits.

(App. at 29.)

## ANALYSIS

Although Peabody appeals the Board's decision, we review the decision of the ALJ to ensure that is rational, supported by substantial evidence, and consistent with governing law. *Peabody Coal Co. v. Estate of Goodloe*, 299 F.3d 666, 670 (7th Cir.2002). The burden is on the claimant to establish that a miner died of pneumoconiosis or that it substantially contributed to his death. 20 C.F.R. § 718.205(a). Ms. Hubbell was required to establish by "competent medical evidence" that pneumoconiosis contributed to Mr. Hubbell's death. *Id.* § 718.205(c)(1); *Livermore*, 297 F.3d at 671.

On appeal, Peabody makes but one argument—that the ALJ's decision to award benefits was legally flawed because it was based solely on the unsupported opinion of Dr. Avena, whom the ALJ credited merely because he was Mr. Hubbell's treating physician. As such, the decision was inconsistent with *Peabody Coal Co. v. McCandless*, 255 F.3d 465 (7th Cir.2001), which held that ALJs must have a medical reason for preferring one physician's conclusion over that of another. *Id.* at 469–70. In *McCandless*, an ALJ credited the opinion of Dr. Henry Bockelman, a board-certified pathologist who after performing an autopsy concluded that a deceased miner had suffered from pneumoconiosis. *Id.* at 467. Dr. Bockelman's opinion contra-

dicted those of five other board-certified physicians, all of whom examined tissue slides from the autopsy and saw no evidence of the disease. *Id.* The ALJ, however, credited Dr. Bockelman's opinion over the others because he performed the autopsy. *Id.* This court overturned the ALJ's decision as irrational because it had no medical basis. *Id.* at 468. It noted that there was no medical reason to believe that the visual scrutiny of gross attributes was a more reliable way to diagnose pneumoconiosis than the microscopic examination of tissue samples. *Id.* Similarly, in evaluating whether the miner's pneumoconiosis was disabling, the *McCandless* court concluded that the ALJ wrongly credited the miner's treating physician, who said that the disease was disabling, in contrast to the view of several medical assessments. The *McCandless* court observed that an ALJ should only credit the treating physician's opinion if there is a medical reason for doing so. *Id.* at 470. This court stressed that a physician's beliefs "must be supported by medical *reasons* if they are to be given legal effect." *Id.*

Peabody argues that this case is controlled by *McCandless* and therefore must be set aside. But contrary to its assertion, we believe that the ALJ's order is consistent with *McCandless,* as well as a later case, *Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs,* 312 F.3d 332, 335 (7th Cir.2002). In *Zeigler,* this court affirmed an award of survivor's benefits that was based primarily on the opinion of the treating physician. Zeigler made the same argument advanced now by Peabody; that the ALJ violated the principles espoused in *McCandless* by crediting the treating physician's opinion over that of Dr. Tuteur who reviewed medical evidence in this case. *Id.* at 335. The ALJ in *Zeigler* rejected Dr. Tuteur's opinion in favor of the treating physician's opinion that the miner's weakened state attribut-

able to pneumoconiosis hastened his death from colon cancer. *Id.* at 334–35. Zeigler argued under *McCandless* that the treating physician's diagnosis was unsupported by medical reasoning. *Id.* at 335. This court rejected that argument, however, concluding that the treating physician's opinion had a medical basis:

> [Zeigler] relies on *McCandless* [citation omitted] for the proposition that medical diagnoses must be supported by medical reasoning. True enough, but as the Secretary observed when promulgating § 718.205(c)(5), the proposition that persons weakened by pneumoconiosis may expire quicker from other diseases *is* a medical point, with some empirical support. *See* 65 Fed.Reg. 79,920, 79,950 (Dec. 20, 2000). Whether this was true of Eugene [the miner] is a question that depends on the state of his physical health and mental health, a subject about which Ridge [the treating physician] professed to be knowledgeable.

*Id.* at 335. Like the physician in *Zeigler,* Dr. Avena observed and noted Mr. Hubbell's physical deterioration over the course of three years and was very familiar with his mental and physical condition. And that familiarity and care is a recognized medical basis for crediting Dr. Avena's view that pneumoconiosis contributed to Mr. Hubbell's death, *see id.,* particularly since Mr. Hubbell's overall weak medical condition contributed to the decision to avoid surgery for his lung cancer.

The ALJ not only had a medical reason for crediting Dr. Avena's opinion, he also correctly discounted Dr. Tuteur's opinion. The evidence presented in this case was similar to that submitted in *Zeigler.* And in *Zeigler,* this court pointed out that there was no evidence in the record to counter the treating physician's view:

> Black lung disease weakens its victims, but maybe not in ways that matter for particular maladies. But Zeigler did not

offer such evidence. Perhaps it does not exist—or perhaps it exists but favors miners by showing that black lung does hasten death from cancer. Either way, there is nothing in the record to counter Ridge's conclusion, which therefore supplies substantial evidence to support the administrative decision.

*Id.* These same infirmities were present in this case. Neither Dr. Avena nor Dr. Tuteur is a cancer specialist, but at least a treating physician like Dr. Avena had the advantage of observing whether Mr. Hubbell's pulmonary problems affected his ability to withstand the effects of cancer. *Id.* at 336.

AFFIRMED