**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GULF & WESTERN INDUSTRIES; OLD
REPUBLIC INSURANCE COMPANY,
Petitioners,

v.

No. 97-2107

GEORGE LING, JR.; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(No. 95-1021-BLA)

Argued: December 3, 1998

Decided: March 19, 1999

Before NIEMEYER and KING, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Petition for review granted and claim remanded by published opinion.
Judge King wrote the opinion, in which Judge Niemeyer and Senior
Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Mark Elliott Solomons, ARTER & HADDEN, Washing-
ton, D.C., for Petitioners. Christian P. Barber, Counsel for Appellate

Litigation, Office of the Solicitor, UNITED STATES DEPART-MENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Laura Metcoff Klaus, ARTER & HADDEN, Washington, D.C., for Petitioner. Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Gary K. Stearman, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C. for Respondent Director.

_____

**OPINION**

KING, Circuit Judge:

Gulf & Western Industries and its workers' compensation liability insurer, Old Republic Insurance Co., petition for review of the final Decision and Order of the Benefits Review Board (BRB) directing the payment of medical benefits to the respondent, George Ling, Jr., a former coal miner, for the treatment of certain maladies said to be related to his coal workers' pneumoconiosis.[1] The BRB subsequently issued an order denying the petitioners' motion for reconsideration, from which review is also sought.

We conclude that the BRB applied our precedent in a manner inconsistent with prevailing Supreme Court authority. We therefore grant the petition for review and remand the claim for further consideration.

I.

A.

On September 25, 1973, Mr. Ling, then 46, filed a claim with the

_____

[1] Mr. Ling is unrepresented by counsel. The Director of the Office of Workers' Compensation Programs for the Department of Labor participates in this appeal as co-respondent, pursuant to 30 U.S.C. § 932(k), which provides that "[t]he Secretary [of Labor] shall be a party in any proceeding relative to a claim for benefits under this part [of the Black Lung Benefits Act]."

Department of Labor (DOL) for federal black lung disability benefits. Inasmuch as Mr. Ling had last been employed by a subsidiary of Gulf & Western, the latter was determined to be the operator responsible for any benefit award.**2**

The claim was heard before an Administrative Law Judge, who, on April 19, 1983, issued a Decision and Order awarding Mr. Ling disability benefits. In accordance with the eligibility requirements of the Black Lung Benefits Act (BLBA or "Act"), 30 U.S.C. §§ 900 to 945, and the applicable regulations, the ALJ found that: (1) Mr. Ling suffered from pneumoconiosis; (2) the affliction arose from his coal mine employment; (3) he was no longer able to perform his previous work; and (4) his disability was due, at least in part, to the pneumoconiosis.**3**

Gulf & Western and Old Republic filed an appeal of the ALJ's decision with the BRB, but they ultimately opted to forgo administrative review. On December 5, 1983, the BRB granted the petitioners' motion to dismiss their appeal with prejudice. Old Republic began disbursing disability benefits to Mr. Ling, who continues to receive them today.

B.

In July 1989, Mr. Ling was admitted to the hospital for three days, suffering from shortness of breath, coughing, and wheezing. He was treated with steroids, antibiotics, and bronchodilators by Dr. John J. White, who noted that Mr. Ling's condition was likely caused by an "acute exacerbation" of chronic obstructive pulmonary disease (COPD), and by pneumoconiosis. The hospital submitted the bill for

_____

**2** <u>See</u> 20 C.F.R. § 725.493(a)(1) (1998) (imposing liability for benefits on the mine operator or other qualifying employer with which the claimant has had the most recent periods of cumulative employment of not less than one year).
**3** <u>See</u> 30 U.S.C. § 901(a)(purpose of the BLBA is, <u>inter alia</u>, to provide benefits "to coal miners who are totally disabled due to pneumoconiosis"); 20 C.F.R. § 727.201-02 (1998) (benefits provided to miners who are totally disabled due to pneumoconiosis arising out of coal mine employment).

Mr. Ling's treatment to Old Republic for payment. **4** Old Republic denied coverage, maintaining that Ling's pneumoconiosis, standing alone, was not of sufficient severity to have engendered a medical condition requiring such extensive treatment.**5**

About five months later, in December 1989, Mr. Ling was hospitalized for a second time. He exhibited many of the same symptoms for which he had been admitted in July, but to a somewhat more pronounced extent. Dr. White again treated Mr. Ling, diagnosing an "acute exacerbation of coalminer's pneumoconiosis." The hospital submitted the bill for Mr. Ling's five-day stay to Old Republic, which again denied coverage.

Mr. Ling asked the DOL to intervene. A claims examiner referred the matter to an independent medical consultant, Dr. Leon Cander, who opined that the petitioners were liable for the hospital bills. The DOL thus directed Old Republic to provide payment. Gulf & Western

_____

**4** The BLBA and its implementing regulations provide that miners who are eligible to receive disability payments are also entitled to medical benefits. 30 U.S.C. § 932(a) (incorporating Section 7 of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 907(a)); 20 C.F.R. § 725.701(a) (1998). These benefits are to be furnished by the responsible operator, see note 2, supra, and encompass "such medical, surgical, and other attendance and treatment, nursing and hospital services, medicine and apparatus, and any other medical service or supply, for such periods as the nature of the miner's pneumoconiosis and ancillary pulmonary conditions and disability require." § 725.701(b) (emphasis supplied). Also included are "palliative measures useful only to prevent pain or discomfort associated with the miner's pneumoconiosis or attendant disability." § 725.701(c).

**5** It had been revealed in the disability proceedings that Ling had smoked approximately one pack of cigarettes per day for about thirty years, until quitting in 1980. In denying coverage, it was Old Republic's position that Ling's afflictions were attributable to his smoking history. Dr. White submitted a written response, opining that, inasmuch as Ling's condition had continued to deteriorate since ceasing to use tobacco products, "the primary etiology of his lung problem is indeed coal workers [sic] pneumoconiosis and that an exacerbation of this disorder was responsible for his hospitalization." JA 102. Old Republic was not persuaded.

4

and Old Republic contested their liability and requested a hearing; they submitted reports from three experts in support of their position.

Dr. Kirk E. Hippensteel examined Mr. Ling and concluded that his poor pulmonary condition was the result of an "obstructive" impairment, i.e., COPD, indicating causation by cigarette smoking, rather than clinical pneumoconiosis, which, Hippensteel asserted, produces a "restrictive" impairment.[6] Dr. Gregory J. Fino and Dr. Benjamin V. Branscomb reviewed Mr. Ling's records, and they concurred with Hippensteel. Each stated his belief that Mr. Ling's condition would have been the same had he never worked in the mines.

Dr. White disagreed. In a letter to the ALJ, he expressed his opinion that the documented level of Mr. Ling's obstructive impairment could not solely account for the severity of his shortness of breath.

A hearing was conducted before an ALJ, who issued a Decision and Order on January 11, 1995, directing Gulf & Western and Old Republic to pay the outstanding hospital bills and provide future payment for "any and all medical treatment related to [Mr. Ling's] breathing difficulties." In so ruling, the ALJ concluded that the regulations were broad enough to encompass COPD as an "ancillary" condition to pneumoconiosis.[7] The ALJ found the opinions submitted by

_____

[6] "A restrictive impairment`denotes a pattern of abnormalities in lung function . . . characterized by reduction in lung volume.' An obstructive impairment `denotes the constellation of abnormalities that result from limitation in expiratory airflow, whatever its cause[.]'" Timothy F. Cogan, Is the Doctor Hostile? Obstructive Impairments and the Hostility Rule in Federal Black Lung Claims, 97 W. VA . L. REV. 1003, 1014 (1995), (quoting CECIL TEXTBOOK OF MEDICINE § 57, at 376 (J. Wyngaarden & L. Smith, Jr., eds., 17th ed. 1985)). Obstructive impairments are typically "found in patients with asthma, bronchitis, emphysema, advanced bronchiectasis, or other disease that cause narrowing of the tracheobronchial system." Id.

Put more succinctly, "[o]bstructive lung diseases diminish the ability to expel air from the lungs, while restrictive lung diseases diminish the ability to get air into the lungs." William S. Mattingly, Black Lung Update: The Evolution of the Current Regulations and the Proposed Revolution, 100 W. VA. L. REV . 601, 606 n.23 (1998).

[7] See note 4, supra. The ALJ emphasized the inclusive approach to benefit eligibility inherent in the regulations:

5

the petitioners' experts to be unpersuasive to the extent that they failed to acknowledge that pneumoconiosis and COPD manifest themselves in the same outward symptoms.**8**

Gulf & Western and Old Republic filed an administrative appeal of the Decision and Order. On February 21, 1997, the BRB affirmed the ALJ's ruling on the strength of our opinion in Doris Coal Co. v. Director, OWCP, 938 F.2d 492 (4th Cir. 1991). A subsequent motion for reconsideration was denied by the BRB on June 25, 1997. Gulf & Western and Old Republic now petition us for review of the BRB's dispositive orders.

_____

> Congress intentionally provided that a person found to have pneumoconiosis under the Act receive payment for any condition associated with or ancillary to pneumoconiosis. Medical experts have not reached a consensus on the symptomatology of pneumoconiosis and, thus, the legislature has not sought to narrow the availability of medical benefits. . . . I find that, as contemplated by the breadth of the regulations, COPD is an ancillary condition to pneumoconiosis.

ALJ's Decision and Order of January 11, 1995, at 2-3[hereinafter 1995 ALJ D/O] (emphasis in original).

**8** The ALJ initially observed that"[w]ith the exception of a hospitalization in 1980 to investigate for lung cancer, [Mr. Ling's] treatments have been to alleviate shortness of breath. Shortness of breath is a primary symptom of pneumoconiosis." 1995 ALJ D/O at 3. In response to the contention of the petitioners' experts that Mr. Ling's underlying physical impairment was attributable to cigarette smoking and not pneumoconiosis, the ALJ concluded that "[i]t is irrelevant whether characteristic distinctions can be made between pneumoconiosis and smokers' diseases if the symptoms treated are indistinguishable. . . .[T]he regulations are broad enough to include COPD as an ancillary condition to pneumoconiosis." 1995 ALJ D/O at 4-5.

The ALJ ruled that the regulations were not so broad, however, as to require Old Republic to pay for the costs associated with the aforementioned cancer testing. Those expenses were adjudged to be unrelated to Mr. Ling's pneumoconiosis, and therefore non-reimbursable. This finding was affirmed by the BRB, and is not contested on appeal.

6

II.

In accordance with the established principles governing judicial oversight of actions undertaken by federal administrative agencies, our review of this matter is confined to the grounds actually invoked by the DOL in support of its decision. SEC v. Chenery Corp., 318 U.S. 80, 95 (1943) ("an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"). To ascertain the bases underlying the DOL's exercise of its power, we look exclusively to the grounds relied upon by the BRB, the highest administrative tribunal. See 33 U.S.C. § 921(c) (jurisdiction of the courts of appeals limited to reviewing final orders of the BRB).**9**

We must therefore examine whether the BRB, in affirming the ALJ's award of medical benefits to Mr. Ling, properly applied our precedent in Doris Coal to the facts at hand. In so doing, we must address the petitioners' contention that the intervening decision of the Supreme Court in Director, OWCP v. Greenwich Collieries, 512 U.S. 267 (1994), implicitly overruled Doris Coal.

A.

In Doris Coal, the claimant, Noah Stiltner, had been adjudged disabled due to pneumoconiosis contracted from his coal mine work and, as a result, was receiving compensation from the Social Security Administration pursuant to Part B of the BLBA. In 1979, Stiltner filed a claim for Part C health benefits. The responsible parties -- Doris

_____

**9 Cf. Huaman-Cornelio v. Board of Immigration Appeals**, 979 F.2d 995 (4th Cir. 1992):

> [W]e review only the findings and order of the BIA, not those of the [Immigration Judge]. Section 106(a) of the Immigration and Nationality Act vests us only with the jurisdiction to review "final orders of deportation[,]" [which] are entered only after all administrative remedies have been exhausted; thus final orders in deportation proceedings come from the BIA, the highest administrative tribunal.

Id. at 999 (citation omitted).

Coal Co. and its insurer, Old Republic -- agreed to pay, for as long as Stiltner lived, all of the health care expenses associated with treating his pneumoconiosis. 938 F.2d at 494.

Several years later, Old Republic balked at paying a number of treatment and pharmacy bills submitted on Stiltner's behalf, asserting that they were unrelated to his black lung disease. The matter was set for hearing before an ALJ. At the hearing, Old Republic presented expert medical testimony that Stiltner's pulmonary disorders were attributable to his cigarette smoking, and not to pneumoconiosis. The limited progression of Stiltner's "simple" pneumoconiosis, Old Republic argued, could not justify the extensive treatments rendered.[10] Id. at 495-96.

The ALJ and BRB rejected Old Republic's argument, but freed the insurer of any obligation to pay for pharmaceuticals prescribed for maladies other than those associated with Stiltner's pulmonary condition. We agreed, and we affirmed the BRB's determination that Doris Coal and Old Republic were liable for those portions of the medical bills related to treating Stiltner's pulmonary disorders. Id. at 496-97.[11]

We premised our decision in Doris Coal upon the broad statutory definition of pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C.§ 902(b). The regulations detail the breadth of what is frequently called "legal" pneumoconiosis: "a disease `arising out of coal mine employment' includes

_____

[10] Clinical pneumoconiosis in coal miners results from their inhalation of coal dust over an extended time. The dust irritates sensitive lung tissue, causing nodular lesions to form. The less severe form of the disease, characterized by a relatively few smaller lesions, is known as "simple" pneumoconiosis. The disease may evolve, however, to the "complicated" stage, which "involves progressive massive fibrosis as a complex reaction to dust and other factors[.]" Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7 (1976).

[11] We reversed the BRB's Decision and Order, however, to the extent that it purported to hold Doris Coal and Old Republic liable for unrelated medical services that had been billed together with treatments for Stiltner's pulmonary infirmities. Id. at 497-98.

8

any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R.§ 718.201 (1998) (emphases supplied).

Clearly, the condition known as "pneumoconiosis" that Congress has determined to be compensable is considerably more wide-ranging than mere clinical pneumoconiosis, cf. note 10, supra. The latter is certainly an affliction intended to be within the ambit of the BLBA and the corresponding regulations, but it by no means defines the boundaries thereof.**12**

Mindful of Congress's expressed intent that entitlement to black lung benefits not be unduly circumscribed, we held that

> a miner meets his burden of showing that his medical expenses were necessary to treat pneumoconiosis if his treatment relates to any pulmonary condition resulting from or substantially aggravated by the miner's pneumoconiosis. Since most pulmonary disorders are going to be related or at least aggravated by the presence of pneumoconiosis, when a miner receives treatment for a pulmonary disorder, a presumption arises that the disorder was caused or at least aggravated by the miner's pneumoconiosis, making the employer liable for the medical costs.

Doris Coal, 938 F.2d at 496-97 (emphases supplied). Thus was born the so-called "Doris Coal presumption."

Stiltner produced medical bills demonstrating that he had been

_____

**12** This is a point that we have made on numerous occasions. See, e.g., Richardson v. Director, OWCP, 94 F.3d 164, 166 n.2 (4th Cir. 1996) ("COPD, if it arises out of coal-mine employment, clearly is encompassed within the legal definition of pneumoconiosis, even though it is a disease apart from clinical pneumoconiosis.") (citing Warth v. Southern Ohio Coal Co., 60 F.3d 173, 175 (4th Cir. 1995)). It bears repeating, however. See Richardson 94 F.3d at 166-67 & n.2 (noting the ongoing failure of lawyers, physicians, and ALJs to distinguish the legal definition from the clinical).

treated for breathing difficulties and other respiratory ailments symptomatic of pulmonary disorders with which he had been diagnosed. Id. at 494-95, 497. We therefore held that he was entitled to the presumption that his symptoms were related to -- or at least made worse by -- his underlying pneumoconiosis. In either case, Old Republic was required to pay the bills unless it could rebut the presumption with sufficient evidence that the services rendered were not related to Stiltner's pneumoconiosis, or were unnecessary for the treatment thereof. Id. at 497.

Old Republic failed to rebut the presumption. Its argument that Stiltner's pulmonary disorders resulted from his cigarette smoking was unavailing in the face of the prior adjudication of disability due to legal pneumoconiosis. No evidence came to light, for example, that Stiltner was seeking benefits to treat a pulmonary condition that had not manifested itself, to some degree, at the onset of his disability. Nor was there any contention that Stiltner was being treated for a pre-existing pulmonary condition adjudged not to have contributed to his disability.

Instead, Old Republic's best argument was that Stiltner's cigarette smoking contributed to the severity of his symptoms, perhaps more than any other factor. It could not be said, however, that the combination of diseases and/or impairments comprising Stiltner's pneumoconiosis failed to at least aggravate his symptoms. The time for that argument had passed with the prior adjudication of disability, which necessarily entailed a finding that these same diseases and/or impairments aggravated Stiltner's symptoms to the extent that he was rendered unable to work.[13] In the absence of sufficient evidence to the contrary, we concluded that Stiltner had adequately proved his entitlement to the benefits sought.

_____

[13] We observed that "[a]ny other result would require the miner to prove again that his respiratory ailment is related to his coal mine employment. . . . [O]perators may not require the miner to prove again that he has pneumoconiosis each time he makes a claim for health benefits." 938 F.2d at 497.

10

B.

Gulf & Western and Old Republic maintain that, in light of the intervening 1994 decision of the Supreme Court in Greenwich Collieries, a remand is necessary for the ALJ to reweigh all of the evidence and determine anew, without regard to the prior finding of disability, whether Mr. Ling's medical bills are related to, or at least aggravated by, his pneumoconiosis. Although we agree that the claim must be remanded, we disagree with the petitioners' contention that the prior adjudication is without relevance.

1.

In Greenwich Collieries, the Supreme Court invalidated the DOL's "true doubt" rule, which had operated to award disability benefits under the BLBA and LHWCA to claimants where the evidence was determined to be "equally probative." The rule was judged to be inconsistent with § 7(c) of the Administrative Procedure Act (APA), which provides that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). Upon concluding that the DOL's rules and policies are required to comport with the APA, 512 U.S. at 270-71, the Court held that the "true doubt" rule impermissibly shifted from the claimant to the employer the burden of persuading the factfinder that its position should prevail. Id. at 281.

According to the petitioners, the Doris Coal presumption acts in a fashion similar to the "true doubt" rule, effectively shifting the burden to employers and their insurers to persuade the factfinder that the claimant's pulmonary impairments are not related to, or at least aggravated by, his pneumoconiosis. This argument misconstrues the nature of the presumption.

In each case where a miner seeks an award of medical benefits, there will be a prior adjudication of disability as the result of legal pneumoconiosis, comprising one or more pulmonary disorders. In every such case, the specific symptoms associated with these disorders will be a matter of record, for it is these symptoms -- shortness of breath, coughing, loss of stamina, etc. -- that render the miner disabled to begin with. Finally, in every case, there will be bills detailing

11

the pulmonary disorders and associated symptoms for which the miner has received medical treatment.

It by no means distorts the truth to postulate that, in the great majority of cases, the disorders and symptoms associated with the miner's disability will closely correspond to those for which he later receives treatment. Even where there is a less than perfect identity, however, the threshold creating the entitlement to benefits -- that the pulmonary condition treated be merely aggravated by the miner's pneumoconiosis -- is low enough to permit a rational conclusion that a particular respiratory infirmity will likely be covered.

Hence, rather than compel the miner to exhaustively document his claim for medical benefits, i.e., requiring him to again laboriously obtain all the evidence that he can that his shortness of breath, wheezing, and coughing are still the result of his pneumoconiosis, we have fashioned the Doris Coal presumption as a shorthand method of proving the same thing. The proof needed is a medical bill for the treatment of a pulmonary or respiratory disorder and/or associated symptoms.

Though the miner's burden of proving his claim is not onerous, it does not follow that it is non-existent or that it has somehow been shifted to the employer or its insurer. If the party opposing the claim produces credible evidence that the treatment rendered is for a pulmonary disorder apart from those previously associated with the miner's disability, or is beyond that necessary to effectively treat a covered disorder, or is not for a pulmonary disorder at all, the mere existence of a medical bill, without more, shall not carry the day. The burden of persuading the factfinder of the validity of the claim remains at all times with the miner.

With regard to this last proposition, at least, we find ourselves in agreement with the Sixth Circuit, the only other court of appeals that has considered the issue. See Glen Coal Co. v. Seals, 147 F.3d 502, 512 (6th Cir. 1998):

> We hold that the Doris Coal presumption merely reallocates the burden of production, and does not affect the burden of proof. The effect of the Doris Coal presumption is to find

12

> that where there is a stage one determination that the claim-
> ant is totally disabled due to pneumoconiosis, then in stage
> two the claimant does not have to come forward with any
> additional evidence to prove that his medical bills are
> related to his pneumoconiosis[.]

The Seals court explained further that

> the only thing that changes is that the claimant's initial bur-
> den of coming forward with evidence supporting his stage
> two claim is eased by virtue of the determination in the first
> stage that he has pneumoconiosis. . . . The presumption does
> not change the fact that the claimant still bears the burden
> of proof to show by a preponderance of the evidence that his
> bills are related to his pneumoconiosis . . .[,] but the claim-
> ant is relieved of the requirement of producing additional
> evidence of this relationship. He may rely on the first stage
> determination to show the relatedness of the condition and
> the medical treatment at issue.

Id.[14] We believe that the above passages accurately state the scope

_____

[14] Although the Sixth Circuit concluded that the Doris Coal presump-
tion passes muster under Greenwich Collieries , it nonetheless declined to
adopt our rule as its own. District Judge Dowd, writing for the panel
majority, reasoned that the presumption is inconsistent with what he per-
ceived to be the Supreme Court's "suggestion" that only statutory pre-
sumptions be given effect in administrative proceedings. Seals, 147 F.3d
at 513 (citing Greenwich Collieries at 280-81). Judge Boggs, writing
separately, disagreed with Judge Dowd on this point. Id. at 517 (Boggs,
J., concurring in the judgment).

With all respect to Judge Dowd, we do not read Greenwich Collieries
nearly so broadly. The Supreme Court did express its concern that indi-
vidual agencies not create, on their own authority, procedural devices in
conflict with the APA, thereby frustrating Congress's goal of promoting
uniformity of practice and procedure among the numerous administrative
bodies. Nothing in Greenwich Collieries, however, prohibits the federal
courts from creating evidentiary presumptions in furtherance of the pub-
lic policy against "plac[ing] a significant burden on the Black Lung bene-
fits system, increas[ing] litigation costs for all of the parties involved,

13

and effect of the <u>Doris Coal</u> presumption. Inasmuch as the presumption does not shift the burden of proof in medical benefit cases from the claimant to the party opposing the claim, it is not contrary to the Supreme Court's decision in <u>Greenwich Collieries</u> .

2.

Mr. Ling, like Stiltner before him, submitted medical bills evidencing treatment for respiratory ailments; he had arrived at the hospital complaining of coughing, wheezing, and shortness of breath. Mr. Ling's breathing difficulties were attributed by his physician to specific pulmonary disorders, <u>i.e.</u>, COPD and clinical pneumoconiosis. This diagnosis, as the BRB correctly recognized, was sufficient to invoke the <u>Doris Coal</u> presumption that Mr. Ling's pulmonary condition -- the diseases with which he was afflicted, manifested in symptoms of respiratory distress -- was related to, or at least aggravated by, his legal pneumoconiosis.**15**

_____

and further delay[ing] important medical benefits that a miner suffering from pneumoconiosis needs." <u>Doris Coal</u> at 497. As the third member of the <u>Seals</u> panel put it:

> I see no reason why . . . the [BLBA] itself would stand as an obstacle to our judicially creating such a presumption. While uniformity may indeed have been one goal of the Act, I agree with Judge Boggs that reading [<u>Greenwich Collieries</u>] as mandating a prohibition of all non-statutory presumptions is overly broad and unwarranted. . . . A <u>Doris Coal</u>-like presumption would be wholly consistent with the remedial purposes of the Act and the principles on which it was enacted and amended.

<u>Seals</u>, 147 F.3d at 521-22 (Moore, J., concurring in part and dissenting in part).

**15** Indeed, the disorders evidenced in Mr. Ling's medical bills are among those that, in 1983, appear to have constituted his legal pneumoconiosis. <u>See</u> ALJ's Decision and Order of April 19, 1983, at 3 (clinical pneumoconiosis established by x-ray, pursuant to the interim presumption detailed at 20 C.F.R. § 727.203(a)(1); existence of potentially disabling chronic bronchitis noted by Dr. Hippensteel; moderate chronic pulmonary disease diagnosed in 1979 by Dr. William F. Schmidt).

14

The BRB, however, construed the <u>Doris Coal</u> presumption as shifting the burden of proof to the employer, which, under <u>Greenwich Collieries</u>, it may not do. <u>See</u> BRB's Decision and Order of February 21, 1997, at 3 ("We disagree with employer's argument that the administrative law judge erred in shifting the burden of proof to employer").

Although the BRB may have reached the same result had it correctly applied the <u>Doris Coal</u> presumption, we think it prudent to remand the claim to the BRB for reconsideration. In so doing, we express our hope that Mr. Ling's claim, now pending for nearly ten years, will receive the expeditious treatment that it deserves.

III.

We conclude that the <u>Doris Coal</u> presumption remains a valid, rational evidentiary device that serves the important public purpose of facilitating the administrative processing of medical benefit claims by coal miners previously adjudged entitled to disability payments under the BLBA. Nevertheless, the presumption must be applied in a manner that does not impermissibly shift the burden of proving the miner's claim to the employer.

The petition for review is granted, and the claim is remanded to the Benefits Review Board for further proceedings consistent with this opinion.

<u>PETITION FOR REVIEW GRANTED,</u>
<u>AND CLAIM REMANDED</u>

15