# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-4226

AMAX COAL COMPANY,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,
and JACK CHUBB,

*Respondents.*

Petition for Review of a Decision and
Order of the Benefits Review Board,
United States Department of Labor.
99-BLA-397

ARGUED SEPTEMBER 27, 2002—DECIDED DECEMBER 6, 2002

Before POSNER, RIPPLE and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Amax Coal Co. ("Amax") appeals from a grant of benefits by an administrative law judge ("ALJ") under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. ("BLBA"), in favor of Jack L. Chubb. The Benefits Review Board ("BRB" or "Board") affirmed the ALJ's decision on initial review and again on reconsideration. Amax asserts the ALJ and BRB erred on multiple grounds. It asserts that it was denied due process of law because of the delay in the litigation, that the ALJ's decision is with-

out substantial evidence, that the statutory presumption for date of onset violates the Administrative Procedure Act ("APA") and is thus invalid, and that the attorneys' fees requested by Mr. Chubb's counsel are unreasonable. For the reasons set forth in the following opinion, we affirm in part and reverse in part.

# I

## BACKGROUND

Jack L. Chubb worked as a coal miner for twenty-eight years. On August 22, 1978, he filed for black lung benefits under the BLBA. A district director awarded benefits and identified Amax as the company liable to pay the benefits. Amax sought a hearing. By the time of the hearing, Mr. Chubb indicated through counsel that he had returned to coal mining on September 1, 1981, and wished to withdraw his claim. In April 1982, the ALJ issued an order approving Mr. Chubb's request to withdraw and dismissing Amax as a party. However, on a motion by the Department of Labor ("DOL") for reconsideration, Amax was reinstated as a party. Mr. Chubb requested a hearing on his entitlement to benefits between August 1, 1978, and August 30, 1981; if it was determined that he was not entitled to benefits from 1978 to 1981, he would be required to reimburse the benefits he had received during that time period.

After experiencing episodes of shortness of breath and some chest pain, Mr. Chubb retired from coal mining on September 16, 1982. Amax contends that Mr. Chubb left because of heart problems.

After multiple proceedings, the BRB, in 1992 stated that the case was a "morass of procedural errors." Petitioner's App. at 89. The BRB determined that, because

>[the] procedural errors in this case go as far back as claimant's motion to withdraw his claim, justice requires that we vacate this case in its entirety, and remand it to the administrative law judge with instructions to convene a new hearing. At the hearing, the administrative law judge should determine whether claimant wishes to pursue his previous request to withdraw his 1978 claim.

*Id.* at 90. Amax sought reconsideration, which was denied in 1994.

On remand, in November 1995, Mr. Chubb decided to pursue his 1978 claim. In 1996, the ALJ concluded that the x-rays, pulmonary function studies, and physicians' opinions invoked the interim presumption of entitlement under three of the alternative methods. *See* 20 C.F.R. § 727.203(a)(1),(2),(4).[1] The ALJ found that Amax had not rebutted the presumption under the applicable rebuttal

---

[1] As will be discussed more fully *infra*, with regard to claims filed after 1980, there are five methods by which a claimant may invoke a rebuttable presumption of entitlement to benefits, namely, by establishing any of the following: (1) pneumoconiosis as shown by x-ray, biopsy, or autopsy evidence under § 727.203(a)(1); (2) a totally disabling respiratory impairment, as shown by pulmonary function tests under § 727.203(a)(2); (3) a specified impairment in transfer of oxygen to the blood as demonstrated by blood gas tests under § 727.203(a)(3); (4) a totally disabling respiratory or pulmonary impairment as shown by physicians' opinions under § 727.203(a)(4); or (5) if the miner is deceased and no medical evidence is available, by affidavit of the miner's physical condition under § 727.203(a)(5). The ALJ here found that Mr. Chubb had invoked the presumption under three of those methods: subsections (a)(1), (a)(2) and (a)(4).

provisions. *See* 20 C.F.R. § 727.203(b)(1)-(4).[2] The ALJ found onset on April 23, 1984, and awarded benefits beginning April 1, 1984.

The BRB affirmed as uncontested the ALJ's finding of invocation, that is, that the claimant had invoked the interim presumption of entitlement, under § 727.203(a)(2) by establishing a totally disabling respiratory impairment as shown by pulmonary function tests.[3] *See* Petitioner's App. at 62 n.2. The BRB nevertheless reviewed the ALJ's other findings that claimant had invoked the interim presumption under § 727.203(a)(1) and § 727.203(a)(4) because they affected the ALJ's findings on rebuttal. The Board determined that the ALJ's other invocation findings based on his weighing of the x-ray interpretations and medical opinions could not stand and, consequently, vacated the rebuttal findings on disability causation and

---

[2] As will be discussed more fully *infra*, once the coal miner has established a presumption of entitlement through any of the five methods under § 727.203(a), the burden shifts to the coal company to rebut that presumption. The coal company rebuts the presumption of entitlement by establishing any of the following facts: (1) the miner is, in fact, doing his usual coal mine work or comparable work; (2) the miner is able to do his usual coal mine work or comparable work; (3) the evidence establishes that the miner's disability is unrelated to his mine employment; or (4) the evidence establishes that the miner does not have pneumoconiosis. *See* 20 C.F.R. § 727.203(b)(1)-(4). Amax unsuccessfully attempted to rebut the presumption under subsections (b)(3) and (b)(4).

[3] "Invocation" refers to a finding by the ALJ that the claimant invoked the interim presumption under one of the methods outlined in § 727.203(a) and thus the burden of production is shifted to the employer to rebut the presumption of entitlement under § 727.203(b).

the existence of pneumoconiosis. Based on contentions of Amax that the April 1984 onset date was "arbitrary" and contentions by Mr. Chubb that the record did not establish a date of onset, the BRB vacated the ALJ's determination of an onset date. *Id.* at 64-65. The BRB advised the ALJ that "where claimant was employed in coal mine employment subsequent to the filing of his claim, if the evidence of record does not establish a particular date of onset, the date of claimant's last coal mine employment is the date for the commencement of benefits." *Id.* at 65.

On remand, the ALJ again awarded benefits. As to the x-ray evidence, the ALJ explained:

> I observe that a majority of the most highly qualified physicians, those who are both B-readers and board certified radiologists, found the presence of pneumoconiosis. Pneumoconiosis is a progressive disease and since the 1982 film was taken, the positive readings among dually qualified physicians constitute a sizeable majority of the readings by physicians possessing the most impressive credentials. It is proper to credit the opinions of dually qualified physicians over B-readers and I do so here. I do not lend added weight to the November 24, 1995 negative readings based on recency, because of the majority findings.

*Id.* at 52 (citations omitted). The ALJ also found the medical opinions established the presence of a totally disabling respiratory impairment under § 727.203(a)(4). The ALJ accepted the medical opinions that diagnosed Mr. Chubb as totally disabled by a respiratory impairment because: (1) Dr. Lenyo is board certified in internal medicine and repeatedly examined and diagnosed Mr. Chubb with respiratory disability due to pneumoconiosis; (2) the opinions of Drs. Lenyo, Combs and Rader were all "reasoned and documented"; and (3) the opinions of Drs. Deppe and

Jacobson were otherwise consistent with the opinions finding disability present. *Id.* at 53. The ALJ afforded additional credence to these opinions because the pulmonary function studies supported the physicians' conclusions. The ALJ discredited the opinions of Dr. Tuteur, because Dr. Tuteur did not believe that Mr. Chubb had pneumoconiosis, and Dr. Myers, because of the equivocal and vague expression of her conclusions.

The ALJ also determined that Amax had not rebutted this evidence. Although Drs. Tuteur and Myers had offered opinions in favor of rebuttal, the ALJ did "not find their opinions to be sufficient to establish rebuttal in the face of five physicians who believe the contrary, one of whom is also board certified." *Id.* at 54. Additionally, the ALJ gave Drs. Tuteur and Myers less weight for the "same reasons" that he had stated earlier. *Id.* The ALJ also dismissed reconsideration of the rebuttal evidence under § 727.203(b)(4) as "unnecessary" because the finding under § 727.203(a)(1) that the disease had been established by x-ray evidence precluded a finding of rebuttal premised on the absence of the disease. *Id.*

The ALJ awarded benefits beginning September 1, 1982, the month in which Mr. Chubb had retired from coal mining. The ALJ noted that the testimony of various physicians and other medical evidence had provided differing dates ranging from 1980 to 1995. The ALJ did not find that any of these established a specific date of onset of when Mr. Chubb first became totally disabled. While under 20 C.F.R. § 725.503 the date of filing is the default date of onset when a specific date of onset is not established by the evidence, the ALJ explained that because Mr. Chubb returned to work after the date of filing,

> pursuant to 20 C.F.R. § 725.503A(c) and Order of the Board, I must find that the date of the Claimant's last

> coal mine employment is the date for the commence-
> ment of benefits, unless credited medical evidence
> establishes that Claimant was not totally disabled at
> some point post retirement. I do not find credited
> medical evidence which establishes that the Claimant
> was not totally disabled after his retirement. Indeed,
> Dr. Lenyo opined that the Claimant was totally dis-
> abled prior to leaving coal mine employment. I must
> therefore use Mr. Chubb's last date of coal mine em-
> ployment as the onset date.

Petitioner's App. at 55. The ALJ ordered benefits com-
mencing on September 1, 1982, the month that Mr. Chubb
retired.

Amax appealed and the BRB affirmed. The BRB noted that
the ALJ had not merely relied on a head count of the
testifying physicians, but had adequately explained his
crediting and discrediting of the various physicians'
opinions. The BRB also rejected Amax's arguments con-
cerning any due process violation, noting that Amax had
been timely notified of the claim and had been an active
participant in all of the proceedings. On reconsideration, the
BRB again affirmed. Mr. Chubb died in 2000. His wife,
Madge Chubb, is pursuing his claim.

## II

## DISCUSSION

### A. Standard of Review

Although we review questions of law de novo, we ac-
cord "the ALJ's factual findings considerable deference."
*Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478
(7th Cir. 2001). In fact, "[w]e ask only whether the ALJ's
decision is rational, supported by substantial evidence,
and in accordance with the law. Substantial evidence is

such relevant evidence as a rational mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Moreover, "[w]e do not reweigh the evidence, resolve inconsistencies in the record, make credibility determinations, or substitute our inferences for those drawn below." *Id.*

**B. Due Process**

Amax claims that the sixteen-year delay in this proceeding (from the time of the 1978 filing to the 1994 order to start afresh) was sufficient to deny it due process of law. It relies on the decisions of the Fourth Circuit in *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1995), and *Lane Hollow Coal Co. v. Director, Office of Workers' Compensation Programs*, 137 F.3d 799 (4th Cir. 1998).

As the Second Circuit has noted, the *Borda* and *Lane Hollow* decisions dealt with delay "in the [defendant's] receipt of notification that proceedings would be instigated, not delay in actually litigating the matter once both parties were on notice of the proceedings." *New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 167 (2d Cir. 2001). In *Lane Hollow*, the DOL failed to inform the coal company of the proceedings against it for seventeen years after it could have notified it and eleven years after it was required to notify it. *Lane Hollow*, 137 F.3d at 802. Similarly, in *Borda*, the DOL failed to process a miner's claim when it was filed in 1978. Ten years later upon a resubmission by the miner, the DOL informed the coal company of the 1988 resubmission, but did not mention any potential validity of a 1978 claim. The day before the 1994 hearing before the ALJ, the coal company was informed that the 1978 claim was still viable. Indeed, the Fourth Circuit itself stated in *Betty B Coal Co. v. Director*,

*Office of Workers' Compensation Programs*, 194 F.3d 491, 501 (4th Cir. 1999), that *Borda* and *Lane Hollow* dealt with denial of due process rights when the defendants had not received "timely notice of the proceeding."[4] In contrast, Amax received notice of, and participated in, all of the proceedings dealing with Mr. Chubb's claim since 1978.

In our view, the decision of the Third Circuit in *C & K Coal Co. v. Taylor*, 165 F.3d 254 (3d Cir. 1999), provides more appropriate guidance in evaluating the present case. There, the DOL delayed twenty-three years in making its determination. Yet the Third Circuit refused to transfer the responsibility from the coal company to the Black Lung Trust Fund because of the lack of significant prejudice to either party. It noted that the delay was "inexcusable," but that the claimant had been receiving benefits from the Trust Fund and the coal company had been able to procure medical evidence before the death of the miner. *Id.* at 258-59. The Third Circuit concluded, "we see no prejudice other than that attendant on the failure to confirm the liability that had been asserted years earlier." *Id.* at 259. Additionally, the Third Circuit saw no reason to shift payment onto the Trust Fund, an innocent party that did not cause the delay, "when there is an operator legally responsible and financially capable of assuming payments." *Id.*; *see also Old Ben Coal Co. v. Luker*, 826 F.2d 688, 693 (7th Cir. 1987) (noting that Congress "intended to ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operators' mines

---

[4] "Betty B complain[ed] about the *course* of the administrative proceedings; the respondents in *Borda* [and] *Lane Hollow* . . . were unaware that proceedings were even under way." *Betty B Coal Co. v. Dir., Office of Workers' Comp. Programs*, 194 F.3d 491, 501 (4th Cir. 1999).

to the maximum extent feasible" (internal quotation marks and citations omitted)).

## C.  Interim and Rebuttal Findings

In awarding benefits in 1996, the ALJ relied on the interim presumption, 20 C.F.R. § 727.203(a), which was repealed in 1980, but which applies to claims that were filed before that date.[5] This interim presumption provides a rebuttable presumption of entitlement (that is, total disability due to pneumoconiosis arising out of coal mine employment). The claimant may invoke this rebuttable presumption by establishing any of the following: (1) pneumoconiosis as shown by x-ray, biopsy, or autopsy evidence under § 727.203(a)(1); (2) a totally disabling respiratory impairment, as shown by pulmonary function tests under § 727.203(a)(2); (3) a specified impairment in transfer of oxygen to the blood as demonstrated by blood gas tests under § 727.203(a)(3); or (4) a totally disabling respiratory or pulmonary impairment as shown by physicians' opinions under § 727.203(a)(4). Upon invocation of the presumption through any of these bases, the burden shifts to the coal company to rebut the entitlement. This rebuttal can be accomplished by showing by a preponderance of the evidence any of the following facts: (1) the miner is, in fact, doing his usual coal mine work or comparable work; (2) the miner is able to do his usual coal mine work or comparable work; (3) the evidence establishes that the miner's disability is unrelated to his mine employment; or (4) the evidence establishes that the

---

[5]  Because it was repealed, Part 727 is no longer in the Code of Federal Regulations but may be found at 43 Fed. Reg. 36,818-36,831 (Aug. 18, 1978).

miner does not have pneumoconiosis. *See* 20 C.F.R. § 727.203(b)(1)-(4).

The ALJ found invocation of the presumption of benefits under § 727.203(a)(2) (a totally disabling respiratory impairment, as shown by pulmonary function tests). Amax did not dispute this invocation. Consequently, Amax's assertions of error concerning the ALJ's findings of invocation under other subsections of § 727.203(a) are mostly not relevant because the presumption is invoked through § 727.203(a)(2). However, as Amax correctly points out, the ALJ's finding that invocation was established under § 727.203(a)(1) by x-ray evidence is still relevant because a finding of invocation under § 727.203(a)(1) precludes a coal company from being able to rebut the interim presumption under § 727.203(b)(4) using a theory that Mr. Chubb did not have pneumoconiosis. *See Mullins Coal Co. v. Dir., Office of Workers' Comp. Programs*, 484 U.S. 135, 150 & n.26 (1987). Amax also contends that the ALJ erred in finding that Amax did not rebut the presumption under § 727.203(b)(3) using a theory that the miner's disability is unrelated to his coal mine employment.

### 1.

The ALJ's finding that the x-ray evidence supported invocation of the presumption (*see* § 727.203(a)(1)) is supported by substantial evidence. The ALJ stated that "a majority of the most highly qualified physicians, those who are both B-readers and board certified radiologists, found the presence of pneumoconiosis." Petitioner's App. at 52. As stated by Amax itself, of the thirteen films, "there are nine readings by doctors dually qualified as board-certified radiologists and B-readers. Six of the nine readings were positive." Petitioner's Br. at 22. Amax argues

that these six positive readings are insufficient because they take into account only four of the thirteen films; but six positive readings out of nine by the most qualified physicians is substantial evidence.

Amax submits that, in evaluating the x-ray evidence and the accompanying medical opinions, the ALJ impermissibly ruled by a head count. We cannot accept this contention. Our review of the record makes it clear that the ALJ adequately explained his credibility determinations. The ALJ did not rely on a mere head count. Rather, he gave weight to the readings taken by the "physicians possessing the most impressive credentials." Petitioner's App. at 52. Amax submits that *Zeigler Coal Co. v. Office of Workers' Compensation Programs*, 23 F.3d 1235 (7th Cir. 1994), *overruled on other grounds by Dir., Office of Workers' Comp. Programs v. Greenwich Colleries*, 512 U.S. 267 (1994), is "virtually identical" to this case. Petitioner's Br. at 23. However, in *Zeigler Coal*, the only medical evidence that the claimant brought forward consisted of seven x-ray readings, five of which were negative, and two of which were positive. The claimant had no other evidence. None of the pulmonary studies or other tests resulted in a qualifying or positive diagnosis of pneumoconiosis. Nor did the claimant even have an examining physician's opinion stating that the physician believed claimant had pneumoconiosis. *See id.* The court held that the two positive x-ray readings standing alone (and contradicted by five negative readings) did not constitute "substantial evidence." *Id.* at 1239. In stark contrast, Mr. Chubb has six positive x-ray readings out of nine readings by dually qualified B-readers and radiologists.[6] The ALJ's finding that the interim pre-

---

[6] Additionally, while not related to invocation under § 727.203(a)(1), Mr. Chubb has corroborating evidence of five

(continued...)

sumption was invoked under § 727.203(a)(1) by x-ray evidence was supported by substantial evidence, and, consequently, Amax cannot rebut the existence of pneumoconiosis under § 727.203(b)(4). *See Mullins Coal Co.*, 484 U.S. at 150 & n.26.

**2.**

Amax also submits that it rebutted the presumption of entitlement pursuant to § 727.203(b)(3) (that is, the evidence establishes that the miner's disability is unrelated to his coal mine employment) because Mr. Chubb's disability was caused by a heart problem and not pneumoconiosis. The standard for § 727.203(b)(3) rebuttal is that the coal company "must demonstrate that the claimant's total disability was caused entirely by an impairment other than pneumoconiosis." *Zeigler Coal Co. v. Kelley*, 112 F.3d 839, 844 (7th Cir. 1997) (internal quotation marks and citations omitted). Although the record shows that Mr. Chubb had heart problems, it also is replete with evidence, including the opinions of five physicians, pulmonary studies, and x-rays, that Mr. Chubb's disability was at least in part due to pneumoconiosis. Amax's only evidence to the contrary is the testimony of Drs. Tuteur and Myers.

Amax argues that the ALJ impermissibly discredited the opinions of Drs. Tuteur and Myers and credited the opinions of five other physicians, one of whom was board certified in internal medicine and repeatedly examined and diagnosed Mr. Chubb with pneumoconiosis. Again, the ALJ did not merely rely on a head count, but ex-

[6] (...continued)
positive opinions by doctors, including one certified in internal medicine, and positive pulmonary studies.

plained his reasons for discrediting the testimonies of Drs. Tuteur and Myers. He discredited Dr. Tuteur's argument that pneumoconiosis was not a contributing cause because Dr. Tuteur did not believe the patient even had pneumoconiosis and the ALJ had found under multiple presumptions that Mr. Chubb did have it. *See Peabody Coal Co. v. Shonk*, 906 F.2d 264, 271 (7th Cir. 1990) ("Since Peabody's physicians rejected the possibility that Mr. Shonk had anthracosis at all, the ALJ distrusted their opinions as to whether the miner's lungs were impaired by any pulmonary or respiratory disease."). The ALJ discredited Dr. Myers because her testimony was "equivocal" and "vague." Petitioner's App. at 53. For example, while admitting that Mr. Chubb has "a significant limitation," she stated that it "appeared more cardiac than pulmonary." Employer's Ex.24. In conclusion, the ALJ noted that

> [a]lthough the opinions of Drs. Meyer [sic] and Tuteur are entitled to added weight based on their board certifications, I find that they are not sufficient to overcome the overwhelming weight of the opinion evidence and objective medical evidence to the contrary.

Petitioner's App. at 53.[7] It is not our province to weigh expert opinions; that is the province of the ALJ. *See Livermore v. Amax Coal Co.*, 297 F.3d 668, 672 (7th Cir. 2002). The ALJ's findings of no rebuttal under § 727.203(b)(3) are supported by substantial evidence.

---

[7] Although the ALJ makes this statement in discussing invocation of the interim presumption under § 727.203(a)(4), *see* Petitioner's App. at 53, he states in discussing rebuttal under § 727.203(b)(3) that "I give less weight to the opinions of Drs. Tuteur and Myers for the same reasons that I did in the discussion of 727.203(a)(4)." *Id.* at 54.

Accordingly, we affirm the ALJ's findings of invocation of the interim presumption under § 727.203(a) with no rebuttal by Amax under § 727.203(b).

## D. Date of Onset

### 1. The Correct Default Date

The ALJ, at the direction of the BRB,[8] determined that

---

[8] As noted previously, the BRB instructed the ALJ that "the date of claimant's last coal mine employment is the [default] date for the commencement of benefits." Petitioner's App. at 65. The BRB cites to two BRB opinions for this proposition, *see id.*, but neither case establishes a rule that the date of retirement should be used as the default date of onset. *See Williams v. Dir., Office of Workers' Comp. Programs*, 13 BLR 1-28, No. 87-3611 BLA, 1989 WL 245234, at *1 (Ben. Rev. Bd. 1989); *Donadi v. Dir., Office of Workers' Comp. Programs*, 12 BLR 1-166, No. 87-2354, 1989 WL 245204, at *1-2 (Ben. Rev. Bd. 1989).

*Williams* was not decided under the interim presumption at issue here; rather, in *Williams*, the ALJ had determined that the evidence established that the claimant suffered from complicated pneumoconiosis, and thus invocation of the irrebuttable presumption of total disability due to pneumoconiosis was established pursuant to 30 U.S.C. § 921(c)(3). Consequently, in discussing a default date of onset, the BRB stated that the onset date "is the month during which the claim was filed . . . unless the evidence affirmatively establishes that claimant had only simple pneumoconiosis for any period subsequent to the date of filing . . . in which case benefits must commence *following* the period of simple pneumoconiosis." *Williams*, 13 BLR at 1-30, 1989 WL 245234, at *2 (emphasis added). The statement does not establish that the date of onset should be the date of retirement when the interim presumption is used. Rather, it is merely an application, to the irrebuttable presumption, of the gen-

(continued...)

the date of onset was the date of Mr. Chubb's retirement,
September 16, 1982, and thus Mr. Chubb was entitled to
benefits beginning September 1, 1982. The ALJ erred in
selecting the date of retirement, rather than the date of
filing, as the default date. *See Green v. Dir., Office of Work-
ers' Comp. Programs*, 790 F.2d 1118, 1119 (4th Cir. 1986)
(finding that where evidence did not establish a default
date and where miner worked after filing his claim, the
ALJ's selection of the retirement date as a default date
of onset was "neither supported by the substantial evi-
dence nor in accordance with the law").

When the evidence does not establish a date of onset,
20 C.F.R. § 725.503 applies. That section provides that
"[w]here the evidence does not establish the month of onset,

---

[8] (...continued)
eral rule that the filing date is the default onset date unless
credible medical evidence indicates that claimant was not
totally disabled at some point subsequent to his filing date.

In *Donadi*, the BRB stated that the ALJ "made an error of
law" in awarding benefits beginning on the date of filing, which
was the default date of onset. *Donadi*, 12 BLR at 1-168, 1989
WL 245204, at *1. The evidence was uncontradicted that the
miner was engaged in coal mine employment from the date
of filing until the date of his death. Consequently, under
§ 725.503A, which requires that benefits be suspended during
the time of any coal mine employment, the miner could not
receive benefits during the time of his coal mine employment. In
contrast, Mr. Chubb was not engaged in work at the time of
his filing in 1978 and did not return to work until September
1981. *Donadi* does not address the issue where the miner re-
turns to work for a short time, after a period of leave, before
finally retiring permanently. As discussed in the opinion prop-
er, *Green v. Director, Office of Workers' Compensation Programs*,
790 F.2d 1118 (4th Cir. 1986), addresses this issue.

benefits shall be payable to such miner beginning with the month during which the claim was filed." 20 C.F.R. § 725.503(b). The coal company can refute that date by bringing forth credible medical evidence that the miner was not disabled on the date of filing. *See Rochester & Pittsburgh Coal Co. v. Krecota*, 868 F.2d 600, 603-04 (3d Cir. 1989). Because the ALJ correctly found that the evidence did not establish a month of onset, the onset date is the date of Mr. Chubb's filing, namely, August 22, 1978.

The matter, however, is complicated by Mr. Chubb's return to work in September 1981 for a year. The ALJ correctly cited 20 C.F.R. § 725.503A (now codified at 20 C.F.R. § 725.504) as covering this issue. That section provides that "the payments to the miner shall be suspended and no benefits shall be payable . . . for the period during which the miner continues to work." The ALJ misapplied the section by determining that the date of onset was the date of Mr. Chubb's retirement. When correctly applied, the section dictates that the onset date is the date of filing with benefits suspended during the period of Mr. Chubb's employment.

The decision of the Fourth Circuit in *Green* is illustrative. In *Green*, the miner was engaged in non-coal mine employment for many years after his date of filing. *Green*, 790 F.2d at 1118-19. The ALJ and BRB determined that the date of the miner's retirement from his non-coal mining jobs should be the default date of onset. The Fourth Circuit reversed, stating that selection of the date of retirement as the default date of onset was not "in accordance with applicable law" and that "the onset date is determined pursuant to 20 C.F.R. § 725.503(b), and thus is December 2, 1974, the day Green filed his claim." *Id.* at 1118-19. The Fourth Circuit explained that, even though benefits are suspended for periods during which a coal miner is em-

ployed in coal mine employment or comparable and gainful employment under 20 C.F.R. § 725.503A, the ALJ's selection of the wrong default onset date could not be excused because the ALJ had failed to examine the claimant's employment from December 2, 1974, to June 1, 1981, to determine whether it was comparable and gainful. *Id.* at 1120. The court held that the date of onset was the date of filing, and the benefits were to be suspended only during periods where the miner was engaged in coal mine employment or in other comparable and gainful employment. *Id.*

Thus the correct default onset date under § 725.503 is the filing date, August 22, 1978.[9] Benefits will be suspended during the year that Mr. Chubb worked according to § 725.503A (now § 725.504) and will commence again beginning August 1, 1982, the month Mr. Chubb retired.

---

[9] When asked at oral argument what onset date it proposed should be used, Amax selected November 1995, explaining that it was the date of the evidence that was principally relied upon by the ALJ in invoking the interim presumptions. However, the date on which a report is made cannot be equated with the date of onset of the disease diagnosed or referenced in that report. The Fourth Circuit stated in *Green*, "medical evidence showing total disability does not establish the onset of disability but is merely indicative that the claimant became disabled at some time prior to that date, and . . . '[w]here the onset date of total disability cannot be determined from the evidence of record, benefits are awarded from the month in which the claim was filed.'" *Green*, 790 F.2d at 1119-20 n.4 (citations omitted).

### 2. The Validity of a Default Date

Amax argues that 20 C.F.R. § 725.503 is invalid, as is any "[u]se of a default date for onset" because it conflicts with § 7(c) of the APA. Petitioner's Br. at 29. Section 7(c) states that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). Amax argues that having a default date, even if it can be rebutted by medical evidence, impermissibly shifts the burden of proof from the claimant to the employer—which is contrary to § 7(c). Amax states that the claimant must be able to prove by a preponderance of evidence the date of onset or fail on his claim.

As noted by the Supreme Court in *Director, Office of Workers' Compensation Programs v. Greenwich Colleries*, 512 U.S. 267, 271 (1994), the BLBA incorporates the APA, "but it does so 'except as otherwise provided . . . by regulations of the Secretary.' 30 U.S.C. § 932(a)." Section 725.503 is a regulation by the Secretary. Therefore, under the express language of the BLBA, the APA does not trump the regulation.[10]

---

[10] The Supreme Court found it unnecessary to decide whether such a provision was valid; rather, the Court assumed "*arguendo*, that the Department has the authority to displace § 7(c) through regulation," but determined that the "true doubt" rule, at issue in *Greenwich Colleries*, was not contained in a regulation by the Secretary. *Dir., Office of Workers' Comp. Programs v. Greenwich Colleries*, 512 U.S. 267, 271 (1994).

We have held elsewhere that "if the Secretary of Labor has promulgated regulations which expressly provide" for the resolution of some matter also covered by the APA, then the APA provision "does not apply." *Midland Coal Co. v. Dir., Office of Workers' Comp. Programs*, 149 F.3d 558, 563 (7th Cir. 1998).

In any event, *Greenwich Colleries* makes plain that the designation "burden of proof" in § 7(c) refers only to "the burden of persuasion" and not to "the burden of production or the burden of going forward with the evidence." *Id.* at 274-76. Section 725.503 "shift[s] the burden of production, rather than the burden of proof," as it is merely a "rebuttable evidentiary presumption[] enacted to ease the burden on claimants in black lung claims adjudications." *Nat'l Mining Ass'n v. Chao*, 160 F. Supp. 2d 47, 70-71 (D.D.C. 2001), *rev'd in part on other grounds and aff'd in part by Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 871-72 (D.C. Cir. 2002) (failing to address the district court's ruling on § 727.503, but noting that another DOL evidentiary presumption for the BLBA was not invalid under § 7(c) of the APA or *Greenwich Colleries* because the regulation "shifted the burden of production, not the burden of proof; it requires nothing more than that operators must submit evidence rebutting an assertion of liability").

The Fourth Circuit has noted that other similar rebuttable presumptions concern the burden of production and not the burden of proof and thus are permitted by *Greenwich Colleries*. For example, concerning the rebuttable *Doris Coal* presumption,[11] the Fourth Circuit explained that

> [t]hough the miner's burden of proving his claim is not onerous, it does not follow that it is non-existent

---

[11] Under the *Doris Coal* presumption, once a miner has proven that he is totally disabled due to pneumoconiosis, the medical bills supplied by the miner for treatment of any pulmonary disorder will be presumed to be necessary for the treatment of pneumoconiosis. *See Gulf & W. Indus. v. Ling*, 176 F.3d 226, 232-34 (4th Cir. 1999); *Doris Coal Co. v. Dir., Office of Workers' Comp. Programs*, 938 F.2d 492, 496-97 (4th Cir. 1991).

or that it has somehow been shifted to the employ-
er. . . . If the party opposing the claim produces credible
evidence that the treatment rendered [is not related
to the pneumoconiosis] . . . the mere existence of a
medical bill without more, shall not carry the day. . . .

"We hold that the *Doris Coal* presumption merely
reallocates the burden of production, and does not
affect the burden of proof."

*Gulf & W. Indus. v. Ling*, 176 F.3d 226, 233-34 (4th Cir. 1999)
(quoting *Glen Coal Co. v. Seals*, 147 F.3d 502, 512 (6th Cir.
1998)). The Fourth Circuit further explained, " 'the only
thing that changes is that the claimant's initial burden of
coming forward with evidence supporting his stage two
claim is eased by virtue of the determination in the first
stage that he has pneumoconiosis.' " *Id.* at 234 (quot-
ing *Glen Coal*, 147 F.3d at 512). Similarly, once the miner
has proven total disability by pneumoconiosis, if the evi-
dence is unclear as to the actual date of onset, then
§ 725.503 establishes a presumption that the miner was
disabled when he filed for benefits, unless the coal com-
pany brings forth contrary credible medical evidence. As
with the *Doris Coal* presumption, § 725.503 shifts the bur-
den of production and not the burden of proof, and so it
is permitted by *Greenwich Colleries* and § 7(c) of the APA.

### E.  Attorneys' Fees

Amax argues that Mr. Chubb's counsel, Sandra Fogel,
was awarded an unreasonable fee in her final fee request
for nineteen hours at a rate of $200 an hour. Under 30
U.S.C. § 932(a), an attorney for a successful claimant of
black lung benefits is entitled to a reasonable fee. The fee
must be "reasonably commensurate with the necessary

work done" and must take into account several factors, including,

> the quality of the representation, the qualifications of the representative, the complexity of the legal issues involved, the level of proceedings to which the claim was raised, the level at which the representative entered the proceedings, and any other information which may be relevant to the amount of fee requested.

20 C.F.R. § 725.366. Additionally, "the rate chargeable against the mine operator must be market-based . . . without a premium for the contingent nature of the compensation." *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 470 (7th Cir. 2001) (remanding an ALJ's award at a rate of $200 an hour, which the attorney claimed was his customary fee, but where the attorney admitted that the highest he had ever charged a paying client was $150 an hour).

Ms. Fogel stated that $200 was her "usual and customary fee." *See* Petitioner's Supplemental App. at 16. However, because Ms. Fogel only litigates black lung cases, she does not have any regular fee-paying clients by which to determine her market-based rate. Attached to her affidavit she included affidavits of various black lung attorneys throughout the country stating that they believed that $200 was a reasonable rate in light of Ms. Fogel's expertise and that they had been awarded fees at a rate of $200 or more in black lung litigation. *See id.* at 31-36. Additionally, the vice president of the local bar association in southern Illinois stated that she believed the fee was reasonable in light of typical fees charged in the area, the expertise required for black lung cases and Ms. Fogel's experience. *See id.* at 24-25. In her brief, Ms. Fogel further notes that she "has filed at least 27 applications for attorney's fees at a rate of $200.00 per hour, 22 of which have been ruled on. All 22 have been approved at the requested

billing rate by different administrative law judges and the Board." Br. of Claimant-Resp't at 30.[12]

We recently upheld a fee award of $200 for the attorney of a successful black lung claimant. There, as here, the coal company asserted that the fee was unreasonable, but we held that "[g]iven VanStone's fee recoveries in a number of similar cases, his representation that this is his usual fee, and the absence of any contrary information regarding the market rate from [the coal company], we affirm the BRB's award of fees." *Peabody Coal Co. v. Estate of J. T. Goodloe*, 299 F.3d 666, 672 (7th Cir. 2002). Similarly, Amax has complained that $200 is not reasonable for the area of southern Illinois, but has not submitted any contrary evidence that the fee is unreasonable. Amax further contends that Ms. Fogel cannot rely on what she has been awarded in other black lung cases to support the reasonableness of her fee. However in *Goodloe*, we considered the attorney's "fee recoveries in a number of similar cases" in determining that the attorney's rate was reasonable. *Id.*

In light of the affidavits submitted by Ms. Fogel and the lack of refutation by Amax, the rate of $200 an hour, approved by the ALJ, is affirmed.

---

[12] Pursuant to Federal Rule of Appellate Procedure 28(j), Ms. Fogel informed us of an additional application for attorneys' fees at the rate of $200 an hour, which was approved by this court in a post-opinion order for her representation in *Consolidation Coal Co. v. Stein*, 294 F.3d 885 (7th Cir. 2002).

## Conclusion

For the forgoing reasons, we affirm the decision of the ALJ with respect to all matters except the date of onset. We reverse the ALJ's selection of the retirement date as the default onset date. When the ALJ has found that no onset date is established by the evidence, the default date is the filing date with benefits suspended for any period of coal mine employment in the absence of any credible medical evidence rebutting disability at the time of filing.

The respondents may recover their costs in this court.

AFFIRMED in part, REVERSED in part

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*